# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHAEL WAYNE BUSH,**

       **Plaintiff,**

**v.**                                                    **Case No:  6:14-cv-1961-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

       **Defendant.**

---

# MEMORANDUM OF DECISION

Michael Wayne Bush (the "Claimant"), appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application Supplemental Security Income ("SSI"). Doc. No. 1; R. 296-98. The Claimant alleges an onset of disability as of August 1, 1995, primarily due to a learning disability and asthma. R. 98, 105, 268-98. The Claimant argues that the Administrative Law Judge (the "ALJ") erred by determining the Claimant's intellectual disability did not meet or equal the severity requirements of Listing 12.05B because Claimant did not have "a valid verbal, performance, or full scale IQ of 59 or less." Doc. No. 8 a 19 at 7-12 (quoting R. 18).[1] Claimant requests that the case be reversed

---

[1] As the Eleventh Circuit has recognized:

> Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed.Reg. 46499 (Aug. 1, 2013). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." *Id.* at 46499. But this change "d[id] not affect the actual medical definition of the disorder or available programs or services." *Id.* at 49500. We follow the agency's new nomenclature.

and remanded for an award of benefits because the evidence establishes beyond a doubt that

Claimant meets the severity requirements of Listing 12.05B.   Doc. No. 19 at 12, 17-18.[2]   For the

reasons set forth below, the Commissioner's final decision is **REVERSED AND REMANDED**

**for further proceedings**.

## I.      THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has

established a five-step sequential evaluation process for determining whether an individual is

disabled.   *See* 20 C.F.R. §§ 404.1520(a).   In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001),

the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at
> step one that he is not undertaking substantial gainful activity.   At
> step two, the claimant must prove that he is suffering from a severe
> impairment or combination of impairments.   At step three, if the
> claimant proves that his impairment meets one of the listed
> impairments found in Appendix 1, he will be considered disabled
> without consideration of age, education, and work experience.   If
> the claimant cannot prove the existence of a listed impairment, he
> must prove at step four that his impairment prevents him from
> performing his past relevant work.   At the fifth step, the regulations
> direct the Commissioner to consider the claimant's residual
> functional capacity, age, education, and past work experience to
> determine whether the claimant can perform other work besides his
> past relevant work.

*Id*. at 1278 (citations omitted).   The steps are followed in order.   If it is determined that the

claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next

step.

---

*Rodriguez v. Comm'r of Soc. Sec.,* No. 15-12356, 2015 WL 9583485, at *2 (11th Cir. Dec. 31, 2015).   Thus, the Court
will also follow the agency's new nomenclature.

[2] In the parties' Joint Memorandum on appeal, Claimant also argues that the ALJ erred by failing to fully develop the
record, when the ALJ failed to obtain evidence in Claimant's file relating to a prior award of SSI benefits.   Doc. No.
19 at 15-16.   However, for the reasons set forth below, the ALJ's findings at step-three are determinative.

## II.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.   ANALYSIS.

As set forth above, Claimant argues that the ALJ erred by finding at step-three of the sequential evaluation process that Claimant's impairments do not meet or equal the severity requirements of Listing 12.05B because the ALJ erroneously determined that Claimant does not have a valid IQ score of 59 or less.   Doc. No. 19 at 8-12.   The Commissioner maintains that the ALJ applied the correct legal standards at step-three and that the ALJ's findings are supported by substantial evidence.   Doc. No. 19 at 12-15.   The Commissioner also implicitly argues that any error by the ALJ is harmless because Claimant did not meet his burden under Listing 12.05B to

demonstrate that he manifested deficits in adaptive behavior prior to age 22.   Doc. No. 19 at 14-15.[3]

At step three of the ALJ's sequential analysis, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the impairments contained in the Listing of Impairments (the "Listings").   The Listings identify impairments, which are considered severe enough to prevent a person from engaging in gainful activity.   20 C.F.R. § 404.1525(a).   By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his age, education, or work experience.   *Id.*   Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment.   *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

If the claimant contends that an impairment meets a listing, as he does here (Doc. No. 19 at 7-12), the claimant bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment."   *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam).   In doing so, the claimant must have a diagnosed condition that is included in the Listings.   *Id.*   Diagnosis of a listed impairment, however, is not enough, as the claimant must also provide objective medical reports documenting that his or her impairment meets the specific criteria of the applicable listing.   *Id.*; *accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam).[4]   Further, "[a]n

---

[3] At step-three, the ALJ made no finding that Plaintiff did not meet the requirements of Listing 12.05B because Claimant failed to meet the first element of the Listing, *i.e.*, that the Claimant have deficits in adaptive behavior, which manifested prior to the age of 22.   R. 18; Doc. No. 19 at 14-15.   At step-three, the ALJ found that Claimant did not meet the severity requirements of Listing 12.05B solely because Claimant does not have a valid IQ score under Listing 12.05B.   R. 18 ("Turning to the requirements of [Listing 12.05B], they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less.").   Therefore, the Court construes the Commissioner's argument as implicitly arguing that any error by the ALJ is harmless.   Doc. No. 19 at 14-15.

[4] A claimant can also be found to equal a listing.   *E.g.*, *Wilson*, 284 F.3d at 1224.   To equal a listing "the medical findings must be 'at least equal in severity and duration to the listed findings.'"   *Id.* (quoting 20 C.F.R. § 404.1526(a)).   Here, Claimant does not argue that he equals Listing 12.05(B).   *See* Doc. No. 18 at 7-12.

impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05B, which is contained 20 C.F.R. Part 404, Subpart P., Appendix 1 (2012) provides, in pertinent part, that a claimant is disabled if he or she meets the following criteria:

> 12.05 [Intellectual disability]: [Intellectual disability] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 [and,]
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ****
>
> B.   A valid verbal, performance, or full scale IQ of 59 or less.

*Id*.[5]   Thus, in order to meet Listing 12.05B, a claimant must satisfy the diagnostic criteria described above and have a "valid verbal, performance, or full scale IQ of 59 or less."   *Id*.[6]

---

[5] The regulations applicable at the time of the ALJ's November 19, 2012 decision (R. 26) have been utilized in this decision.   *See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.05B (2012).   The only material difference between the current version of Section 12.05B (2015) and the 2012 version applicable to this decision is that the term "Mental retardation" was replaced with "Intellectual disability."   *Id*.; *see also supra* n.1.

[6] The Eleventh Circuit has described "the diagnostic description in the introductory paragraph" as requiring a claimant to: "(1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior, and (3) have manifested deficits in adaptive behavior before age 22."   *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   In *Hodges v. Barnhart*, 276 F.3d 1265, 1266-67 (11th Cir. 2001), the Eleventh Circuit held:

> We agree with other circuits in concluding that there is a presumption that [intellectual disability] is a condition that remains constant throughout life. Therefore, we find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ results after the age of twenty-two.

*Id*. (reversing to ALJ for determination of whether there is substantial evidence to rebut the presumption of [intellectual disability] prior to the age of 22).   Thus, with respect to the first element of Listing 12.05B, *i.e*, that the claimant has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" prior to the age of 22, a claimant presumptively satisfies that element if the claimant presents evidence of valid low IQ results after attaining the age of 22.   *Id*.   Here, the ALJ never addressed whether Claimant met the diagnostic requirements of the introductory paragraph of Listing 12.05B, but based his findings at step-three solely on the validity of Claimant's IQ scores.   R. 18.

The introductory paragraphs to Listings 12.00, explain that Listing 12.05 is different from the other mental disorder listings, in the following respects:

> The structure of the listing for [intellectual disability] (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].  It also contains four sets of criteria (paragraphs A through D).  <u>If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.  Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations</u>. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

*See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.00 A. (2012) (emphasis added).  Thus, the regulations provide that if a claimant meets the diagnostic criteria of the introductory paragraph of Listing 12.05B and meets the requirements of Paragraph B, the Commissioner will consider the claimant's intellectual disability "severe enough to prevent [the claimant from] doing any gainful activity without additional assessment of functional limitations."  *Id.*

With respect to determining the validity of IQ scores, the regulations provide that there must be documentary evidence from an acceptable medical source, which means a licensed psychiatrist, psychologist, or physician.  *See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.00 D(1)(a) (2012) (citing 20 C.F.R. §§ 404.1513 and 416.913).  *See also Giles v. Barnhart*, 182 F.

Supp. 2d 1195, 1199 (M.D. Ala. Jan. 28, 2002) (IQ tests conducted by an individuals who are not

acceptable medical sources are entitled to little evidentiary weight).   With respect to standardized

intelligence tests, the regulations further provide that they "are essential to the adjudication of all

cases of [intellectual disability] not covered under the provisions of 12.05A," and "the narrative

report that accompanies the test results should comment on whether the IQ scores are considered

valid and consistent with the developmental history and the degree of functional limitation." *See*

20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.00 D(6)(a)-(b) (2012) (emphasis added).[7]

At step-three, the ALJ correctly described the requirements a claimant must meet in order

to meet or equal a listing under 12.05B.   R. 17-18.   With respect to Listing 12.05B, the ALJ found

as follows:

> Turning to the requirements in paragraph B, they are not met
> because the claimant does not have a valid verbal, performance, or
> full scale IQ of 59 or less.   The claimant was administered the
> Weschsler Adult Intelligence Scale III on October 9, 2008.   The
> claimant obtained a verbal IQ score of 55, Performance IQ of 53, a
> Full Scale IQ of 50, and Working Memory Score of 50.   The
> claimant was evaluated by J. Jeff Oately, Ph.D., who noted that the
> claimant's scores were valid.   Dr. Oatley offered the claimant the
> diagnosis of moderate [intellectual disability] [citing R. 444-47].
> Although the claimant obtained a Full Scale IQ of 50, the claimant
> is capable of functioning at a higher level than what one would
> expect based upon the noted scores.   The claimant reported
> activities of daily living that include going to the store to make
> purchases, watching television, taking care of his personal hygiene,
> and talking to friends and family.   The claimant goes to get his hair
> cut, he prepares simple meals, and he takes care of the yard work
> [citing R. 349-357].

---

[7] At step-two of the sequential evaluation process, the ALJ determined that Claimant has the following severe impairments: "mild [intellectual disability], history of polysubstance dependence, and cognitive deficits."   R. 17 (emphasis added).   Thus, the ALJ found that Claimant has a mild intellectual disability.   *Id.*

R. 18 (emphasis added).[8]   Thus, at step-three, the ALJ determined that Claimant does not meet the severity requirements of Listing 12.05B because Claimant does not have a valid IQ score of 59 or less and based on the ALJ's finding that Claimant's activities of daily living support a higher level of functioning.   R. 18.   The ALJ found that Claimant does not have a valid IQ score because Claimant is capable of functioning on a higher level than the results of Dr. Oatley's standardized testing indicates due to Claimant's activities of daily living.   R. 18.

Dr. Oatley is a psychologist.   R. 444.   At the Commissioner's request, on October 9, 2008, Dr. Oatley performed a consultative psychological evaluation of Claimant.   R. 444. Claimant, who was twenty-eight years old at the time of the evaluation, appeared with his mother. R. 444.   Dr. Oatley noted that Claimant appeared cognitively limited, but Claimant was able to write his own name "rapidly and accurately."   R. 444.   Dr. Oatley did not review any medical records, but did review educational records, which showed that Claimant was classified as "Educable Mentally Handicapped and had goals that were to improve spelling, independent living skills, and dealing with conflicts."   R. 444.[9]   Dr. Oatley further noted that Claimant was "almost expelled from school" in 1997, and had "extensive legal difficulties in the community."   R. 444. Claimant quit school in the 9th grade and has never been employed.   R. 445, 447.

Dr. Oatley's mental status examination revealed that Claimant had normal mood and affect, behavior, and no hallucinations.   R. 445-446.   Dr. Oatley's other findings are as follows:

> 2. Quality of thinking: Fund of knowledge appears limited as he did
> not know the order of the days in the week, knew his age, but not
> the shape of a ball.   He knew an orange and a banana had peels.

---

[8] The document cited by the ALJ in support of activities of daily living noted above is an Adult Function Report signed by Sharonda Johnson.   R. 349-357.   Ms. Johnson's relationship to Claimant is unclear from the record and the ALJ does not address it in the decision.

[9] Dr. Oatley also noted he was "unable to gather an accurate history" due to the Claimant's mother interfering with Claimant's answers.   R. 444.

He followed two steps of a 3-step instruction.   He did not interpret the saying "Don't make a mountain out of a molehill".   His speech was coherent and did not contain any loose associations, perseverations, nor was it impulsive.

3. Concentration:   He counted forwards to 10 correctly in 30 [seconds].   He named 4 animals in 15 [seconds].   He could not spell CAT.   He was able to follow the conversation without difficulty.   Concentration is consistent with intellectual functioning.

4. Orientation: He knew his identity and that he was in a doctor's office for a disability evaluation.   He knew the year, but not the day, date, or month.   Orientation is consistent with intellectual functioning.

5. Memory: He correctly recalled 3 sequential numbers.   He recalled what he had for breakfast this morning.   He correctly recalled no items from a list of four items 5 minutes later.   Memory is consistent with lowered intellectual functioning.

R. 445.   Dr. Oatley administered the Wechsler Adult Intelligence Scale III, which resulted in the following IQ scores: Verbal IQ 55; Performance IQ 53; Full Scale IQ 50; Working Memory 50. R. 446.   Dr. Oatley opined: "Testing appears valid as [Claimant] was cooperative and showed adequate concentration.   He showed no significant patterns in his test scores."   R. 446.

Dr. Oatley diagnosed Claimant with moderate intellectual disability, DSM-IV 318 "as indicated by an individually administered intelligent test and adaptive behavior."   R. 446 (emphasis added).[10]   Dr. Oatley based his diagnosis of moderate intellectual disability on the results of the standardized testing and Claimant's adaptive behavior.   R. 446.   Dr. Oatley further opined that Claimant's prognosis is guarded and, while he understands the value of money, Claimant "could not correctly compute simple mental purchases" and "appears incapable of managing funds."   R. 446.   With respect to activities of daily living, Dr. Oatley noted that

---

[10] Thus, Dr. Oatley's diagnosis of moderate intellectual disability is more severe than the ALJ's finding, at step-two, of mild intellectual disability.

Claimant: lives with his grandmother; uses a microwave to prepare food; is self-sufficient in bathing and dressing; and is able to hang up clothes.   R. 446.   Thus, in reaching his opinion that Claimant has moderate intellectual disability and valid IQ scores, Dr. Oatley specifically considered Claimant's adaptive behavior and Claimant's activities of daily living.   R. 446.

In *Popp v. Heckler*, 779 F.2d 1497, 1498-99 (11th Cir. 1986), the claimant had an IQ score of 69.   *Id*.   The ALJ found the IQ score to be incredible and, therefore, not valid.   *Id*.   Citing and quoting a prior version of the regulations, the Eleventh Circuit found that "Listing 12.00B4 does not require the Secretary to make a finding of [intellectual disability] based on the results of an IQ test alone."   *Popp*, 779 F.2d at 1499.[11]   The Court went on to hold:

> The listing [12.00B4] requires the Secretary to take into account the intelligence test *and* the medical report.   Moreover, the <u>test results may be examined to assure consistency with daily activities and behavior</u>.   Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record to determine whether Popp was in fact [intellectually disabled].

*Popp*, 779 F.2d at 1499 (emphasis added).   The Eleventh Circuit found that because Popp taught high school algebra, was close to obtaining a bachelor's of science degree, and had obtained an associates degree, substantial evidence supported the ALJ's decision to reject the IQ score and find Popp not intellectually disabled.   *Id*. at 1499-1500.

---

[11]   At that time, Listing 12.00B4 (1985) provided:

> [Intellectual Disability] denotes a lifelong condition characterized by below-average intellectual endowment as measured by well standardized intelligence (IQ) tests and associated with impairment in one or more of the following areas: learning, maturation, and social adjustment.   The degree of impairment should be determined primarily on the basis of intelligence level and a medical report.   <u>Care should be taken to ascertain that test results are consistent with daily activities and behavior</u>.

*Popp*, 77 F.2d at 1499 (emphasis added) (quoting Listing 12.00B4).   Listing 12.00B4 no longer exists, and the current regulations are quoted *supra* at pp. 5-6.

In *Rodriguez v. Comm'r of Soc. Sec.*, -- F. App'x --, 2015 WL 9583485, at *1 (11th Cir. Dec. 31, 2015) (unpublished), the claimant argued that the ALJ erred at step-three by failing to find the claimant met the requirements of Listing 12.05(B) and (C).   *Id*.   The Eleventh Circuit found that "'a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.'"   *Id*. (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)).   Thus, the Eleventh Circuit found it permissible for the ALJ to rely upon the claimant's daily activities and work history to reject the results of an IQ score.   *Id*. at *2.   The Court further determined such findings may be made implicitly in the ALJ's decision.   *Id*.   Ultimately, the Eleventh Circuit found that ALJ's implicit determination was supported by substantial evidence because the claimant had attended mainstream high school through the eleventh grade without specialized education classes, the claimant assisted his wife in household chores, he did the grocery shopping for the family, and he had maintained a lengthy work history, which included skilled and semi-skilled jobs.   *Id*. at *2-3.

In this case, the ALJ's determinations that the Claimant has a mild intellectual disability and did not have a valid IQ score are not supported by substantial evidence.   In his opinion, Dr. Oatley noted that he was unable to gather an accurate history of the Claimant's present illness, but Dr. Oatley reviewed educational records and compared Claimant's test results with Claimant's activities of daily living and adaptive behavior.   R. 444-46.   Based on the Claimant's test results, activities of daily living and adaptive behavior, Dr. Oatley opined that the Claimant has a moderate intellectual disability and the standardized testing results were valid.   R. 444-46.   Dr. Oatley's opinion complies with the regulations, which require that standardized testing be conducted by an acceptable medical source and that the narrative accompanying the test results comment "on

whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."   20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.00 D(1)(a) and (6)(a) (2012).   The record in this case contains no other standardized testing results from an acceptable medical source.   *But see* R. 435.[12]

As set forth above, the ALJ determined Claimant had a mild intellectual disability and Claimant's the IQ scores were not valid based on the Claimant's activities daily living.   R. 17-18.   Thus, the ALJ's findings conflict with Dr. Oatley's opinions.   Yet, the ALJ's decision does not explain why the ALJ's own consideration of largely the same activities of daily living outweighs the opinions of an acceptable medical source with respect to the validity of the IQ scores or even, more generally, Dr. Oatley's diagnosis of moderate intellectual disability.   *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (ALJ may not substitute own judgment of the claimant's condition for that of the medical experts); *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring) (an ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional."); *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (finding ALJ's rejection of claimant's IQ scores amounted to impermissible substitution of the ALJ's "unsupported opinion about [intellectual disability]" where administering physician considered claimant's activities of daily living but did not find them inconsistent the IQ scores).   Moreover, the Claimant's activities of daily living and employment background are far more restricted than those of the claimants in *Popp*, 779 F.2d at 1499-1500, and *Rodriguez*, -- F. App'x --, 2015 WL 9583485, at *2-3, who, respectively, had histories of teaching algebra and

_____

[12] The record contains a July 17, 2003 intake report from the State of Florida Department of Corrections, wherein it documents that a Sherrese Burnam administered a "BETA III" IQ test on Claimant, who received a score of 94.   R. 435.   There is no indication that Ms. Burnam is a licensed psychiatrist, psychologist, or physician, who may be considered an acceptable medical source.   R. 435.   The report itself contains no narrative.   R. 435.

holding skilled employment.   R. 18, 44-47; *see also Durham*, 34 F. Supp. 2d at 1380-81 (finding ALJ's rejection of IQ scores not supported by substantial evidence, in part, because claimant's activities of daily living and work history were so distinguishable from those of *Popp*).   Here, the Claimant has never worked and it is wholly unclear how the Claimant's minimal ability to make purchases at a store, watch television, take care of his own personal hygiene, perform some household chores, talk to his friends, and go get his hair cut are inconsistent with or affect the validity of Claimant's IQ scores or Dr. Oatley's opinion as to the same.   R. 18.   Accordingly, on this record, the Court finds that the ALJ's step-three findings are not supported by substantial evidence, warranting reversal.[13]

## IV.   **REMEDY.**

Claimant requests remand for an award of benefits.   Doc. No. 19 at 17-18.   Reversal for an award of benefits is only appropriate either where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, or where the Claimant has suffered an injustice.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (disability beyond a doubt warrants award of benefits); *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982) (injustice warrants award of benefits).   In this case, the ALJ's findings with respect to the validity of Claimant's IQ scores are not supported by substantial evidence.   However, the ALJ did not address whether Claimant met "the diagnostic description in the introductory paragraph," which requires a claimant to: "(1) have significantly subaverage general intellectual functioning; (2) have

---

[13] The Court rejects the Commissioner's implicit argument that any error by the ALJ with respect to the validity of Claimant's IQ scores is harmless (Doc. No. 19 at 14-15).   The Commissioner's argument is premised on the contention that Claimant failed to come forth with evidence demonstrating deficits in adaptive functioning prior to attaining the age of twenty-two.   *Id.*   As set forth above, the Eleventh Circuit has held that where a claimant presents evidence of a qualifying IQ score after turning twenty-two, the claimant has presumptively satisfied that requirement. *See Hodges*, 276 F.3d at 1266-67.

deficits in adaptive behavior, and (3) have manifested deficits in adaptive behavior before age 22."

*Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   R. 18.   The ALJ solely addressed the validity of Claimant's IQ scores.   R. 18.   While a valid IQ score gives rise to the presumption that a claimant satisfies the diagnostic requirements of the introductory paragraph, the Commissioner may rebut that presumption.   *See Hodges v. Barnhart*, 276 F.3d 1265, 1266-67 (11th Cir. 2001).   Accordingly, on this record, the Court finds that a remand for further proceedings is appropriate.   *See Durham*, 34 F. Supp. 2d at 1381-82 (remanding for further proceedings where ALJ's finding IQ scores not valid was not supported by substantial evidence).[14]

## V.   **CONCLUSION.**

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED** and **REMANDED for further proceedings** pursuant to sentence four of 42 U.S.C. § 405(g); and

2.   The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 28, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable M. Hart

---

[14] Because the case must be remanded based on the ALJ's above stated errors, it is unnecessary to address whether the ALJ also erred by failing to develop the record.

Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
Desoto Bldg, Suite 400
8880 Freedom Crossing Trl
Jacksonville, FL 32256-1224